IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03551-CMA-NRN

JENNIFER LEELING and
TONY LEELING,

Plaintiffs,

v.

WALMART, INC., a foreign corporation,

Defendant.

---

**ORDER ON
PLAINTIFFS' FIRST MOTION TO COMPEL DISCOVERY REPONSES AND REOPEN
DISCOVERY FOR SPECIFIED PURPOSES (Dkt. #49)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter came before the me on Monday, May 24, 2021 on a discovery dispute. I considered Plaintiffs' Motion to Compel Discovery Responses and to Reopen Discovery for Specified Purposes (Dkt. #49), Defendant Walmart, Inc.'s ("Walmart") Response (Dkt. #55), and all associated exhibits. I also heard argument by the Parties. For the following reasons, it is hereby **ORDERED** that Plaintiffs' Motion to Compel Discovery Responses and to Reopen Discovery for Specified Purposes (Dkt. #49) is **GRANTED IN PART** and **DENIED IN PART**.

This is a slip and fall case. Plaintiff Jennifer Leeling claims that on November 5, 2017, she slipped on the wet floor of a Walmart store located in Parker, Colorado. The allegation is that Walmart's floor cleaning machine (referred to by the Parties as a "Zamboni") leaked water and that Walmart knew of the puddled water but failed to

adequately warn customers or place warning signs around the water prior to Mrs. Leeling slipping and falling. As reflected in Walmart's incident reports, there is apparently no dispute that the Zamboni leaked (or was leaking) and left a puddle on the floor. The entire incident, including Mrs. Leeling's fall, is captured on security-footage video.

After some discovery, and back and forth between the Parties as to the adequacy of Walmart's answers to interrogatories and requests for production, on December 21, 2020, Walmart apparently saw the writing on the wall and filed a stipulation with the Court stating that "Walmart admits it failed to exercise reasonable care to protect against a dangerous condition of which it knew or should have known." *See* Dkt. #30. In the stipulation, Walmart continues to dispute "that Plaintiff Jennifer Leeling and/or Plaintiff Tony Leeling sustained injuries, damages, and losses as a result of the Walmart incident." *Id*. Walmart also denied that its failure to exercise reasonable care caused Mrs. Leeling's alleged injuries, damages, or losses. *Id*. Finally, Walmart maintained its affirmative defenses as enumerated in its Answer. *Id.*

In terms of disputing causation, Walmart suggests that Mrs. Leeling suffered the same injuries, damages, and losses that she claims in this case in a prior incident from February 2016, when part of a granite sign fell on her head, neck, and shoulder. Thus, to the extent Mrs. Leeling is claiming significant serious medical problems, Walmart will argue at trial that such problems are not a result of her falling at Walmart but are the result of her prior trauma.

One of Walmart's affirmative defenses is that Mrs. Leeling's injuries were proximately caused by her comparative negligence. *See* Dkt. #13 at 13 ("The alleged

2

injuries and damages, if any, were proximately caused by the comparative negligence of Plaintiff Jennifer Leeling, precluding or reducing any recovery pursuant to C.R.S. § 13-21-111."). When asked for the factual basis for the affirmative defense of comparative negligence, Walmart's counsel explained, in words or substance, that the security camera video shows two shoppers approach the wet area of the floor, look down, and then step around to avoid the obvious wet area. Mrs. Leeling, of course, says she did not see the water on the floor, and she slipped and fell. Walmart's comparative negligence defense is that since other shoppers saw and avoided the pooled water, Mrs. Leeling was comparatively negligent in not herself seeing and avoiding it.

On September 25, 2020, the Parties filed a Joint Status report that included the following statement: "There are issues that have arisen between both parties as to the adequacy of disclosures and discovery responses. The parties are cooperating in an attempt to resolve those issues. The parties intend to take depositions of witnesses after resolution of those disclosures and discovery issues." Dkt. #21.

The original Scheduling Order in this case set the discovery cutoff for December 18, 2020. *See* Dkt. #19 (issued March 5, 2020). The Scheduling Order did list as persons to be deposed, "The Walmart employee that was using the leaking floor machine at the time of the incident" and "Corporate representative(s) of the Walmart Defendants." *Id.* at 14. On October 27, 2020, I issued an order granting an extension of case deadlines, which included extending the discovery cut-off to March 2, 2021. *See* Dkt. #25.

No discovery disputes were raised with the Court prior to the close of discovery on March 2, 2021. I have relatively simple discovery dispute resolution procedures (laid

out in my practice standards), whereby parties can get a discovery hearing on very short notice (usually within a week) and normally without the need for formal briefing. I make a habit of explaining my expedited discovery dispute resolution at every initial scheduling conference.

I held a Status Conference in this case on March 2, 2021. During that Status Conference, I reset the Final Pretrial Conference for April 20, 2021, and said that any outstanding discovery disputes could be addressed at that conference. *See* Dkt. #37. I have listened to the tape recording of the March 2, 2021 hearing and at that hearing, Plaintiff's counsel, Mr. Munafo, did mention potentially the need to the take the deposition of the Zamboni driver, in part because of Walmart's intransigence in providing certain documents or answering written discovery. No mention was made by Mr. Munafo of any need to take a Rule 30(b)(6) corporate representative deposition. Mr. Munafo also said that there was a mediation scheduled and depending on whether the case resolved, he might seek leave to take the additional deposition.

The mediation was unsuccessful and new counsel for the plaintiff, Ken Falkenstein, entered an appearance for the first time on April 14, 2021. Dkt. #39. Mr. Falkenstein apparently is going to be trial counsel in the case.

I held the Final Pretrial Conference on April 20, 2021. At that conference, Plaintiffs raised again the issue of needing additional discovery, including the two depositions. I ordered the Parties to brief the issue and I set a discovery conference for May 24, 2021. I did however enter the Final Pretrial Order. *See* Dkt. #43.

After the entry of the Final Pretrial Order, Judge Arguello set the case for trial on July 19, 2021 at 8:30 a.m, with a Final Trial Preparation Conference set for July 14,

2021. I am informed by counsel that if Plaintiffs' request to reopen discovery is granted, Judge Arguello Chambers has indicated she is prepared to continue the trial date. In addition, Plaintiffs' counsel indicated that Mrs. Leeling has a medical condition that will require surgery, and as a result, Plaintiffs have filed a motion with Judge Arguello to continue the trial because of the medical issue. *See* Dkt. #57.

### Issues in Dispute

**1. Depositions**

Plaintiffs say they need to reopen discovery in order to take two depositions—depositions that were listed in the original scheduling order and have been contemplated since the beginning of the case: (1) the Walmart employee driver of the leaking Zamboni machine, and (2) a Rule 30(b)(6) corporate representative deposition. But Plaintiffs never actually scheduled these depositions before the close of discovery. Plaintiffs claim they were waiting to schedule these depositions until after they received full and fair responses to their written discovery requests. *See* Dkt. #49 at 6 ("As clearly shown, for the past year Plaintiffs have made repeated efforts to get Defendant to comply with its discovery obligations to no avail."); Dkt. #49 at 6 n.5 ("These depositions were not taken before the discovery cutoff because Walmart never provided full and complete discovery responses, and Plaintiffs repeatedly told Walmart that they needed that information in order to take meaningful depositions."); Dkt. #49 at 8 ("These depositions are standard in almost every civil case and were expressly anticipated in the Scheduling Order at the beginning of the case. It is Defendant's own obstructive conduct that put Plaintiffs in the position of having to seek this limited reopening of discovery.").

## 2. Additional Discovery Responses

Plaintiffs also ask that the Court order Walmart to supplement its discovery responses. In words or substance, Plaintiffs complain that many of Walmart's discovery responses were 95 percent objection, and five percent evasion, providing little-to-no substantive response, including to requests for admissions that obviously should have been admitted, and interrogatories that should have been answered.

One example is Plaintiff's Request for Admission #10, which asks, "Admit that YOU OR ANYONE ACTING ON YOUR BEHALF were responsible for the water puddling on the floor where Plaintiff Jennifer Leeling slipped and fell on November 5, 2017, located at the Walmart #2892 at 11101 S. Parker Road, Parker, CO 80134."

Walmart's answer:

> Objection to the extent this request is compound, seeks a legal conclusion, and is an improper request for admission. This request is vague and ambiguous as to "responsible" and "water puddling." "[R]equests for admission relating to the truth of a legal conclusion are properly objectionable." *Cunningham v. Standard Fire Ins. Co.*, Civil Action No.07-cv-02538-REB-KLM, 2008 U.S. Dist. LEXIS 52518, at *6 (D. Colo. May 29, 2008). Further, this request seeks to alter the applicable standard of care at issue in this case. Section 13-21-115(3)(c)(I), C.R.S., identifies the standard applicable to Walmart for the alleged subject incident: "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Without waiver, Walmart admits that at all times relevant to the Complaint it was the landowner, as that term is defined in C.R.S. § 13-21-115, of Walmart #2892, located at 11101 S. Parker Road, Parker, CO 80134.

Dkt. #49-3 at 45. The answer is nonsensical. In light of Walmart's concession that it was negligent in creating a dangerous condition and failing to warn, and given that its own incident reports show the Zamboni machine was leaking water, this should have been a simple "ADMIT."

Another example is Request for Admission #13: "Admit that YOU OR ANYONE ACTING ON YOUR BEHALF had the ability to place a warning device to warn people of the water on the floor, prior to Jennifer Leeling's slip and fall on November 5, 2017." Walmart's response was obfuscatory:

> Objection to the extent this request is compound, vague and ambiguous, argumentative, and is an improper request for admission. This request is vague and ambiguous as to "had the ability to" and "prior to." "Because requests for admission establish the truth of the matter, they 'are not to be treated as substitutes for discovery processes to uncover evidence, and that they may not be applied to controverted legal issues lying at the heart of the case.'" *Cunningham v. Standard Fire Ins. Co.*, Civil Action No. 07-cv-02538-REB-KLM, 2008 U.S. Dist. LEXIS 52518, at *5 (D. Colo. May 29, 2008) (citations omitted). "[P]arties should use requests for admission to elicit simple and direct answers. Compound, complex, and vague requests for admission are prone to objection." Id. (citations omitted). Further, this request seeks to alter the applicable standard of care at issue in this case. Section 13-21-115(3)(c)(I), C.R.S., identifies the standard applicable to Walmart for the alleged subject incident: 'an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known.' Without wavier, denied. C.R.S. § 13-21-115 identifies the law Walmart most follow. Walmart admits that at all times relevant to the Complaint it was the landowner, as that term is defined in C.R.S. § 13-21-115, of Walmart #2892, located at 11101 S. Parker Road, Parker, CO 80134.

Dkt. #49-3 at 48.

This answer, too, is absurd. It is especially so given that the Plaintiffs' prior Request for Admission (#12) asked Walmart to admit that it had not placed a warning device (such as a cone or sign) to warn people of the water on the floor. Walmart denied that no warning device had been placed. When asked at the discovery hearing for the factual basis for *that* denial, Walmart's counsel said that a cone had been placed in the general area of the wet floor. If Walmart were capable of placing a cone somewhere near the wet area, then it should have admitted that it "had the ability to

7

place a warning device to warn people of the water on the floor" in response to Request for Admission #13.

Requests for admissions are designed to promote efficiency and preserve resources, including judicial time and resources. *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1264 (11th Cir. 2002); *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981); *Tamas v. Fam. Video Movie Club, Inc.*, 301 F.R.D. 346, 347 (N.D. Ill. 2014). The hope is that requests for admissions will expedite any trial and "relieve the parties of the cost of proving facts that will not be disputed at trial." *Perez*, 297 F.3d at 1264; *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987); 8B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2252, at 320–21 (3d ed. 2010). Requests for admissions permit "litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir. 1988). Requests for admissions are "a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove." *Pickens v. Equitable Life Assurance Soc'y of the U.S.*, 413 F.2d 1390, 1393 (5th Cir. 1969).

When answering a request for admission, the party must admit the proposition, specifically deny it, state in detail why the party can neither admit nor deny it, or object to the request. Fed. R. Civ. P. 36(a)(3)–(4). Here, rather than unequivocally admitting or denying the relatively simple requests, Walmart made nonsensical objections.

Plaintiffs insist that they should be entitled to answers to discovery, under oath, that they can use the sworn responses for evidentiary purposes at trial. Under other circumstances, I would likely deny such a belated request to compel more answers to

8

discovery. My discovery dispute resolution procedures are simple. After trying to resolve the disputed issues with Walmart's counsel, Plaintiffs' counsel should not have hesitated in contacting chambers to request a discovery conference. According to Plaintiffs' counsel, the first letter detailing the deficiencies with Walmart's responses was sent on September 23, 2020. Having gotten no relief from conferral, Plaintiffs' counsel should have promptly contacted the Court for a discovery conference. A discovery conference seeking to compel more detailed responses to discovery normally should be requested before the close of discovery. *See Norton v. The City of Marietta, Okla.*, 432 F.3d 1145, 1156 (10th Cir. 2005) (affirming denial of motion to compel discovery when the motion was filed "well after the close of discovery" and two days before the pretrial conference). That said, the Court credits Plaintiffs' counsel's representations that they were trying to address the deficiencies with Walmart's counsel before burdening the Court with a discovery dispute. The correspondence cited in Plaintiffs' filings confirm these efforts.

**Standard for Reopening Discovery after Discovery Deadline**

As numerous courts have noted, and the undersigned agrees, a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Washington v. Arapahoe Cty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) (citations omitted). Scheduling order deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b).

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.... Carelessness

9

> is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D.Colo.2000) (internal quotation and citation omitted); *accord Summers*, 132 F.3d at 604 (holding that "total inflexibility is undesirable" in the context of a motion to adopt a new scheduling order).

Whether to modify a scheduling order to reopen discovery "is committed to the sound discretion of the trial court." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir.1987). *See also Benton v. Avedon Eng'g, Inc.*, No. 10–cv–01899–RBJ–KLM, 2013 WL 1751886, at *1 (D. Colo. April 23, 2013). When exercising its discretion, the Court considers the following factors: (1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id.* (citations omitted). With regard to the fourth factor, the Tenth Circuit has explained that "[d]emonstrating good cause under [Rule 16(b)(4)] 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'" *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)). A scheduling order plays an important role in the management of a case and should not be unnecessarily amended. *Cf. Washington*, 197 F.R.D. at 441 (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"). *See also Rent–a–Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y.2003) ("scheduling orders

are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"). A party seeking discovery after the deadline must have been diligent in both seeking discovery and seeking relief from the court when the requested discovery is not forthcoming.

Applying the *Smith* factors to the instant dispute, I will grant in part and deny in part Plaintiffs' request for additional discovery.

First, although trial in this case is imminent, the Parties have represented that Judge Arguello is prepared to move the trial date if additional discovery is allowed. Second, here the request for additional discovery is opposed, but I find that Walmart in its written discovery responses has been seriously evasive and so Walmart's opposition counts for little under such circumstances. Third, while Plaintiffs should have moved more expeditiously in seeking relief from the Court to address the deficiencies in Walmart's responses, the history of correspondence shows that Plaintiffs were diligently trying to get Walmart to update and supplement its written discovery responses. So, I do find that Plaintiffs were diligent in seeking updates to the written responses. As to the foreseeability of the need for additional discovery, Plaintiffs had predicted the need to take the deposition of the Zamboni driver and the Rule 30(b)(6) witness from the beginning of the case. However, Walmart's stipulation changed the calculus in certain respects. And finally, in the issue of the whether the discovery is likely to lead to admissible information, I find that the deposition of the Zamboni driver will likely lead to admissible information regarding Walmart's affirmative defense of contributory negligence. The updated written responses too, will likely be admissible (although many of the written requests are not necessary in light of Walmart's stipulation).

11

**Order on Depositions**

Taking into account all the factors and the history of the case, including Plaintiffs' failure to promptly and timely bring these issues to the Court's attention, and Walmart's delay in stipulating to its own negligence, I do find that it would be in the interests of justice to allow Plaintiffs to take the deposition of the Zamboni driver out of time. In light of Walmart's insistence on maintaining the affirmative defense of comparative negligence, the Zamboni driver may have information about Walmart's advance knowledge of the leaking machine, how long it was leaking, the extent of the leak, the amount of water on the floor, the need to promptly warn of any leaking water so as to prevent injuries to customers, and the ability of Walmart to warn customers of puddled water. I will also note that the correspondence seems to confirm that, at least with respect to the deposition of the Zamboni driver, Plaintiffs had indicated a continued desire to take this deposition.

With respect to a Rule 30(b)(6) witness, I do not find that Plaintiffs have been sufficiently diligent in seeking such a deposition. Even in the context of the instant motion for out-of-time discovery, Plaintiffs have not provided any proposed 30(b)(6) topics for any such witness. In light of Walmart's stipulation to negligence, it is unlikely that at Rule 30(b)(6) witness would provide any materially new information that the Zamboni driver would not provide. Taking a Rule 30(b)(6) deposition is also a much more involved and costly process, as it involves identifying a witness, meeting with counsel, educating that witness about the company's position, etc. If Plaintiffs really wanted and needed a Rule 30(b)(6) deposition, they should have sought it out sooner in this case. The request to take a Rule 30(b)(6) deposition is denied.

Plaintiffs shall take the deposition of the Zamboni driver, not to exceed three hours in length, within 21 days from the date of this order.

**Order on Written Discovery**

With respect to the written discovery, Walmart shall, within two weeks from the date of this Order, supplement as described below its responses to the following written discovery requests, without unnecessary verbiage or objections, simply answering the questions. To the extent a request for admission is denied, Walmart shall specifically state the factual basis for the denial.

**Interrogatory #6**: Walmart shall answer this interrogatory which asks for an identification and description of any injuries claimed by the Plaintiffs that were not caused by the fall at Walmart. To the extent that the interrogatory calls for expert testimony, Walmart shall make specific references (by page and paragraph number) to its expert's report in providing an answer.

**Interrogatory #7**: Walmart shall answer this interrogatory which asks for an identification and description of any health care provider services claimed by the Plaintiffs that were not due to the fall at Walmart. To the extent that the interrogatory calls for expert testimony, Walmart shall make specific references (by page and paragraph number) to its own expert's report in providing an answer.

**Interrogatory #8**: This interrogatory calls for whether Walmart had policies or procedures in place and whether they were followed. Walmart shall answer this interrogatory. Walmart has produced the written policies but needs to explain whether or to what degree they were followed.

**Interrogatory #10**: This interrogatory calls for a description of the steps taken to investigate this incident. Walmart shall answer this interrogatory.

**Interrogatory #11**: This calls for identification of prior claims or incidents involving Walmart. Walmart need not respond to this interrogatory. It is overly broad and vague and, in light of the concession of negligence, not likely to lead to admissible evidence. There is no claim of punitive damages in this case.

**Interrogatory #12:** This interrogatory asks whether there were any caution signs, barriers, warning cones, or anything else at or near the incident scene that warned the public of the condition where Plaintiffs slipped and fell on November 5, 2017. Walmart has sufficiently answered this question by stating: "Without waiver, yes, a caution cone was placed near the area where the alleged incident occurred. Plaintiffs are referred to the security footage and WM Leeling_00013." No supplement is required.

**Interrogatory #14**: This interrogatory asks Walmart to "provide a detailed description of how you believe the subject INCIDENT occurred . . ." Walmart's answer directs the Plaintiff to refer to the security footage. This is a sufficient response. Based on its response, Walmart's belief as to what happened is reflected on the video. According to Walmart's counsel, no Walmart associate was a witness to the incident, so Walmart's "belief" is merely a function of its interpretation of what is on the video.

**Interrogatory #15**: This interrogatory asks what was the cause of the water on the floor. Walmart's answer refers to the security footage and two documents. Walmart should answer this interrogatory. If Walmart's investigation or incident reports reflect

that the water came from the Zamboni, then Walmart should answer this interrogatory clearly and simply by saying where the water came from.

**Request for Production #9**: This request for Production asks for production of "all documents that YOU OR ANYONE ACTING ON YOUR BEHALF believe supports your denial of liability to Plaintiff of your pleaded defenses." In its response, Walmart refers to its disclosures. I believe this request for production is overbroad, and therefore Walmart need not supplement its response.

**Request for Admission #10:** This asks Walmart to "Admit that YOU OR ANYONE ACTING ON YOUR BEHALF were responsible for the water puddling on the floor . . ." Walmart needs to respond to this request for admission as specified in the Rules. If the response is anything other than an unqualified admission, Walmart needs to explain why the request is denied. Walmart's response that it is a landowner was not responsive.

**Request for Admission #12:** This asks Walmart to "Admit that YOU OR ANYONE ACTING ON YOUR BEHALF did not place a warning device (such as a cone or sign) to warn people of the water on the floor, before Plaintiff Jennifer Leeling slipped and fell on November 5, 2017." Walmart has denied this request. Walmart shall supplement its response by explaining the basis for the denial.

**Request for Admission #13**: This asks Walmart to "Admit that YOU OR ANYONE ACTING ON YOUR BEHALF had the ability to place a warning device to warn people of the water on the floor, prior to Jennifer Leeling's slip and fall on November 5, 2017." Walmart needs to respond to this request as specified in the rules and if the response is anything other than an unqualified admission, Walmart needs to explain

why the request is denied. Walmart's response that it is a landowner was not responsive.

**Request for Admission #14**: This request asks that Walmart admit the words contained in a document produced by Walmart. Walmart need not respond to this. The document says what it says.

**Request for Admission #15:** This request asks that Walmart admit the words contained in a document produced by Walmart. Walmart need not respond to this. The document says what it says.

**Request for Admission #16:** This request asks that Walmart admit the words contained in a document produced by Walmart. Walmart need not respond to this. The document says what it says.

### Conclusion

It is my hope that the Parties will be able to effectuate the requested discovery promptly without endangering the trial date. With the COVID pandemic severely limiting the number of trials in this court for the past year, trial dates are precious commodities in the United States District Court for the District of Colorado. They should not be lightly given up by Parties seeking justice.

Date: June 2, 2021

N. Reid Neureiter
United States Magistrate Judge